UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

   AMBER MARIE JENSEN,                       Case No. 14-22055-dob
                                                             Chapter 7 Proceeding
                Debtor.                          Hon. Daniel Opperman
_____/

JARED BRANCH,

                Plaintiff,

                                                             Adv. Case No. 14-02125-dob
V.

AMBER MARIE JENSEN

                Defendant.
_____/

<u>TRIAL OPINION</u>

       Plaintiff Jared Branch's adversary proceeding against Defendant Amber Jensen regards a debt arising out of Defendant preparing and filing Plaintiff's 2012 federal and state taxes. Plaintiff claims the debt is non-dischargeable, pursuant to 11 U.S.C. § 523(a)(2), as a result of Defendant's actual fraud. Defendant denies Plaintiff's allegations and requests costs and fees, pursuant to 11 U.S.C. § 523(d), arguing that Plaintiff's adversary complaint was not substantially justified.

<u>Jurisdiction</u>

       The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

1

## Findings of Fact

At the November 6, 2015, trial, Plaintiff, Plaintiff's mother, Lynn Branch, Defendant, and Adam Mazur, a friend of Defendant, testified.

Plaintiff and Defendant began a romantic relationship after meeting at a bar in 2011. They moved in together, with Defendant's two children, in May 2011 in Sault St. Marie, Michigan. During their cohabitation, Plaintiff worked at Big Lots, where he held varying positions. In 2012, the year involving the relevant tax return, Plaintiff earned $12,367.00 as a Big Lots employee. As of the date of trial, Plaintiff had been at Big Lots for five years and was a manager there. While living with Plaintiff, Defendant was a stay-at-home mother. Due to a work-related injury, she received workers' compensation of approximately $300 weekly.

While together, the parties paid their bills primarily with money from Plaintiff's Big Lots income and Defendant's workers' compensation. During their first year living together Defendant did most household chores. In the second year, Plaintiff took on more of the household work. Plaintiff claims this occurred because Defendant became lazy; Defendant denied that claim and instead testified that Plaintiff's work hours were substantially reduced at that time, leaving him home more and with the time to contribute to household chores.

While the parties lived together, and per their agreement, Defendant managed their finances. Generally, Plaintiff handed over his paychecks to Defendant, and Defendant took care of paying their joint bills. In her role as manager of the parties' finances the Defendant, again with Plaintiff's agreement, prepared and filed Plaintiff's income tax returns for both 2011 and 2012. The parties agreed they would split equally any refund Plaintiff received on his 2012 taxes. Defendant's preparation of Plaintiff's 2012 taxes and her disposition of the resulting refund form the basis of this litigation.

Plaintiff admitted while testifying that he gave Defendant his 2012 W2 voluntarily and with the intention she would file his taxes. He agreed for her to do so despite the fact their relationship had deteriorated and they were planning to separate. Plaintiff also conceded he has no evidence Defendant intended to keep the entire 2012 refund or was trying to trick him at the time she agreed to file his 2012 return.

Defendant prepared and filed Plaintiff's 2012 taxes, per their agreement. In so doing, Defendant improperly listed her own children on Plaintiff's 2012 taxes, as she had on Plaintiff's 2011 taxes. It is unclear whose idea this was; each party blames the other and there is not sufficient evidence for the Court to determine who was responsible for this mistake. What is clear is neither party has an accounting background nor any education or experience in tax matters. Accordingly, based on the evidence presented the Court finds neither party is culpable, for purposes of this matter, for including Defendant's children on Plaintiff's tax return.

Primarily because Plaintiff's tax return included Defendant's children, Plaintiff received a large refund in 2012 of $8,330.00 ($7,400.00 in federal refund and $930.00 in state refund). Both refunds were deposited electronically into a bank account Defendant opened a few days before filing the taxes. In the following weeks, Defendant withdrew all refund amounts from the bank account at issue. The Court can only make a clear finding with regard to $400.00 of the refund. Defendant paid that amount to the parties' landlord, per Trial Exhibits 23 and 24. There is a dispute as to the remaining refund monies, and neither side established where those monies went. Plaintiff claims Defendant kept them and used them for her benefit, spending them after she separated from Plaintiff and in a manner beyond her means. Defendant claims she used some of the money to pay joint bills and gave Plaintiff at least $2,000.00 cash out of the refunds.

3

14-02125-dob    Doc 25    Filed 03/14/16    Entered 03/14/16 10:56:35    Page 3 of 11

The Court cannot determine what happened to the remaining refund monies and, therefore, cannot make a specific finding of fact as to this issue.

Subsequently, and after Plaintiff and Defendant separated, Plaintiff discussed his 2012 taxes with his mother. She in turn consulted a tax professional who told Plaintiff that his 2012 tax return was not filed properly. In August 2013, Plaintiff prepared and filed amended returns for both 2011 and 2012. The amendments were necessary because it was not proper for Plaintiff to claim Defendant's children on his taxes in either year. The 2011 amendment required Plaintiff repay $1,229.00 and the 2012 amendment required he repay $6,691.00. Plaintiff obtained the funds to repay these liabilities by liquidating an educational savings account.

On March 27, 2013, Plaintiff filed a police report claiming Defendant had stolen his tax refund. In his statement with the police report, Plaintiff claimed Defendant did not have his permission to file his 2012 taxes. That was not true, because Plaintiff testified at trial that he voluntarily agreed Defendant would prepare and file his 2012 taxes. In December 2013, Plaintiff filed a state court lawsuit against Defendant alleging fraud and conversion. That case was pending trial in September 2014 when Defendant filed bankruptcy. In this adversary proceeding, Plaintiff alleges Defendant engaged in actual fraud and had stolen his 2012 refund monies "in an amount not less than $8,400.00." Plaintiff claims that Defendant owes him a debt in this amount, and that debt is not dischargeable pursuant to 11 U.S.C. § 523(a)(2).

Plaintiff supports his claim by arguing he suffers limitations in his cognitive ability, making him unusually susceptible to manipulation. The Court makes several findings of fact relevant to that argument.

Before dating Defendant, Plaintiff lived by himself at various times. After separating from Defendant, Plaintiff has lived alone without trouble for a year and a half. Plaintiff has held

his job at Big Lots for five years. He has received multiple promotions during that time and is now a furniture manager with the company. Furthermore, Plaintiff's mother testified at the trial that she had little concern about Plaintiff's well-being while he lived with Defendant. Moreover, Plaintiff's mother once threw him out of the house, despite knowing he had no place to live. This forced Plaintiff to live in a homeless shelter for as long as two months.

Additionally, although Plaintiff has suffered from ADHD most of his life, he has not been diagnosed with any condition that makes him legally disabled, and he needed no prescription medication while living with Defendant. There is also no evidence Plaintiff required a doctor's care for any condition or concern while living with Defendant.

Plaintiff also argues that his reduced mental capacity made him honest to a fault. However, at trial it was shown that Plaintiff made false statements at times. Plaintiff made false statements on the police report he filed. He also offered false testimony during his deposition in this case.

Finally, the Court finds Plaintiff had a problem with alcohol and used marijuana while living with Defendant. Plaintiff admitted as much while testifying. The Court finds that to the extent Plaintiff struggled to recall details of events that occurred while he lived with Defendant, his abuse of alcohol and marijuana likely contributed to those struggles. Plaintiff's false statements and substance abuse cause the Court to give Plaintiff less credibility as a witness. The Court reaches the conclusion after close review of the demeanor of the witnesses, and in particular, Plaintiff and Defendant, and after reflection and consideration of all the evidence offered at trial.

Discussion

I.   Law

11 U.S.C. § 727 of the Bankruptcy Code allows a debtor to obtain a general discharge from all debts that arose before the order for relief. 11 U.S.C. § 727(b). However, exceptions exist for certain obligations, such as debts for money obtained by actual fraud. 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) states:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt –
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

To prevail on a claim under 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert),* 141 F.3d 277, 280 (6th Cir. 1998). The plaintiff has the burden of proving each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). A court must construe all discharge exceptions strictly, giving the benefit of the doubt to the debtor. *Rembert,* 141 F.3d at 281.

A court measures the intent to deceive by a subjective standard. *Rembert*, 141 F.3d at 281. A debtor intends to deceive when she makes a false representation that she "knows or should have known would induce another to advance goods or services to the debtor." *Bernard Lumber Co. v. Patrick (In re Patrick)*, 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). "Fraudulent intent requires an actual intent to mislead, which is more than mere negligence..." *Palmacci v.*

*Umpierrez*, 121 F.3d 781, 788, (1st Cir. 1997) (citations omitted). A court may infer fraudulent intent from the totality of the circumstances, if the circumstances reflect conduct by the debtor indicating an intention to deceive the creditor. *Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Col. 2002). To this end, a court can consider a debtor's subsequent conduct to the extent it indicates her state of mind at the time of the alleged fraud. *Id.* However, a court must construe any benefit of the doubt in the debtor's favor. *Haney v. Copeland*, 291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003).

II. Analysis

1. *Plaintiff's Claim Under 11 U.S.C. § 523(a)(2)(A)*

The Court finds Plaintiff did not prove by a preponderance of the evidence that Defendant intended to defraud him at the time she allegedly promised to file his 2012 tax return and give him half of the refund.

Plaintiff alleges Defendant lied to him when she promised to prepare and file his 2012 tax return and equally split his tax refund with him. However, Plaintiff did not establish when, exactly, Defendant made this alleged misrepresentation. This is a significant failure on Plaintiff's part to establish the requisite fraudulent intent. The Court must determine Defendant intended to defraud Plaintiff <u>at the time</u> she made the alleged misrepresentation. *Rembert*, 141 F.3d at 280 (emphasis added). The Court cannot determine the Defendant's state of mind at some undetermined point in history.

Whenever Defendant made the alleged misrepresentation, Plaintiff did not establish by a preponderance of the evidence that she intended to defraud him at that time. Plaintiff conceded, while testifying, that he has no evidence Defendant was trying to trick him or intended to keep

the full refund when she promised to file his 2012 return.  Accordingly, the Court is left only with circumstantial evidence of Defendant's subjective intent.

That evidence included, primarily, that Defendant opened a bank account into which the 2012 refund was deposited and that Defendant spent above her perceived means in the months following her separation from Plaintiff.  Those circumstances may be suspicious, but the law requires the Court give Defendant the benefit of the doubt.  *Haney*, 291 B.R. 740, 766.  In the context of the applicable law, Defendant's actions do not establish by a preponderance of the evidence that she intended to defraud Plaintiff when she agreed to do his taxes.

Those actions also have alternative explanations that were not addressed.  Defendant may have opened the bank account because she thought there was no other option for depositing the refund monies.  She may have done so because it made it easier to transfer money out to pay the joint bills she claimed to have paid after the parties separated.  Regardless, her opening of the account is not enough to establish fraudulent intent by a preponderance of the evidence.

This is confirmed when the Court compares Defendant's version to Plaintiff's version of events.  Plaintiff claims he has certain mental limitations, but he is able to function without medical care or medication and has not been diagnosed with any legal disability.  Also, Plaintiff knowingly misrepresented facts on a police report and during his deposition that he did not allow Defendant to prepare and file his 2012 tax returns, but at trial he testified the parties agreed Defendant would prepare the 2012 taxes, and Plaintiff admitted he has no evidence Defendant was trying to deceive him at the time they made that agreement.  Defendant testified consistently throughout this case that the parties did agree that she would prepare and file Plaintiff's 2012 tax returns and would use the refund to pay joint bills.

8

14-02125-dob    Doc 25    Filed 03/14/16    Entered 03/14/16 10:56:35    Page 8 of 11

Another element of the totality of circumstances upon which Plaintiff relied heavily is his mental capacity. Plaintiff claims he suffers from severely impaired cognitive ability. The Court disagrees that Plaintiff is severely impaired. Plaintiff has worked at Big Lots for years, has received promotions, and is a manager. Thus, he not only has held a normal, private-sector job for years, he has moved up the ladder at that job. These actions reflect the mental capacity of someone capable of handling his own affairs. Additionally, both before and after his relationship with Defendant, Plaintiff lived by himself with nobody helping him manage his finances or personal care. Again, this would be difficult for someone suffering from the level of mental deficiency Plaintiff claims in this case.

The testimony of Plaintiff's mother, Lynn Branch, also confirms for the Court that Plaintiff has adequate cognitive abilities. She testified that before Plaintiff's relationship with Defendant, she drove him to and from school and work. After a while she tired of transporting him and made him ride his bike. This required Plaintiff to ride "many miles" each day, alone. This does not reflect the conduct of a parent that believes her child cannot manage himself. This is not much different than Plaintiff's complaint that he often had to ride the bus to and from work while living with the Defendant.

Ms. Branch also testified that she only made the relatively short trip from Gaylord to Sault St. Marie to visit Plaintiff once while he lived with Defendant. Similarly, she spoke on the phone with him sporadically. These facts indicate Ms. Branch was not worried about Plaintiff's well-being while he lived with Defendant. If that was because Plaintiff was capable, it contradicts his claim of mental deficiency. If it was because Defendant was there caring for him, it contradicts Plaintiff's efforts to cast Defendant as a bad person. Either way, Plaintiff's case is not supported by these facts.

9

14-02125-dob    Doc 25    Filed 03/14/16    Entered 03/14/16 10:56:35    Page 9 of 11

Perhaps most important, Ms. Branch admitted she once kicked Plaintiff out of the house, forcing him to spend time in a homeless shelter. If Plaintiff was mentally deficient, it would be both cruel and dangerous to force him into a homeless shelter. Thus, to agree with Ms. Branch about Plaintiff's mental state, the Court has to determine Ms. Branch displayed little concern for her son's safety and well-being. The Court declines to make such a finding. Plaintiff may be risk averse or of only average intellect, but his mother's testimony confirms he had sufficient mental capacity to manage his affairs. Instead of doing so, he made the convenient and adult choice of agreeing to Defendant handling the household finances and preparing his taxes.

The circumstances surrounding disposition of the refund monies also prevent the Court from finding in Plaintiff's favor. Plaintiff claims Defendant had stolen his entire 2012 state and federal tax refund, but Exhibits 23 and 24 establish that after receiving the refund Defendant paid, at a minimum, $400 toward the parties' rent. Defendant testified she paid other joint bills with refund monies as well, and gave $2,000.00 cash to Plaintiff. Unfortunately, the trial evidence was not sufficient for the Court to determine where the money really went. Plaintiff had the burden of proving Defendant's fraudulent conduct proximately caused him to lose his refund money, and he did not meet that burden.

The trial evidence did not paint the picture of a manipulative woman taking advantage of her hapless boyfriend so she could steal his money. Instead, it reflected agreement between two capable adults whereby Defendant stayed home and managed the family finances. The parties agreed Defendant would do Plaintiff's 2011 and 2012 taxes and Plaintiff did not prove that at the time Defendant agreed to do the 2012 taxes she misrepresented her intentions regarding the refund monies. When giving Defendant the benefit of the doubt, as law requires, the Court must

find that her conduct after the agreement is not enough to establish fraud. Accordingly, the Court denies Plaintiff the relief requested in his adversary complaint.

2. *Defendant's Claim for Costs and Fees Under 11 U.S.C. § 523(d)*

Pursuant to 11 U.S.C. § 523(d), a court may award a debtor reasonable costs and attorney's fees when a creditor requests a determination of dischargeability based on a substantially unjustified position. This does not require finding the creditor acted in bad faith or frivolously, but merely that he proceeded past the point where he knew or should have known he could not meet his burden of proof. *In re Williams*, 224 B.R. 523, 530 (B.A.P. 1998). The test is reasonableness—the creditor's position must be reasonable in both law and fact. *Id*. at 531.

The Court finds Plaintiff litigated this matter with substantial justification. While he did not ultimately meet his burden of proof, Plaintiff's belief that he could meet it was reasonable throughout this litigation. He presented reasonable circumstantial evidence supporting his position. That evidence was not enough to prevail on the merits, but it justified Plaintiff prosecuting his adversary complaint. Accordingly, the Court denies Defendant's claim for costs and fees under 11 U.S.C. § 523(d).

.

**Signed on March 14, 2016**

                                               **/s/ Daniel S. Opperman**
                                               **Daniel S. Opperman**
                                               **United States Bankruptcy Judge**